**BENFORD, Admx., Appellant,**

v.

**CITY OF CINCINNATI, Appellee.**

[Cite as *Benford v. Cincinnati* (1990), 67 Ohio App.3d 603.]

Court of Appeals of Ohio,
Hamilton County.

No. C–890111.

Decided May 9, 1990.

*Daniel E. Whiteley, Jr.,* for appellant.

*Richard A. Castellini,* City Solicitor, and *James F. McCarthy,* for appellee.

*Per Curiam.*

Plaintiff-appellant, Brenda Benford, Administratrix of the Estate of Antwan Benford, deceased, appeals from the judgment of the Hamilton County Court of Common Pleas granting the motion for summary judgment of defendant-appellee, city of Cincinnati (city), and dismissing appellant's wrongful-death

complaint with prejudice. For the reasons that follow we affirm the trial court's judgment.

The record discloses that on May 31, 1986, at approximately 4:00 p.m., appellant's three-year-old son, Antwan, was found by a passerby floating face down in a swimming pool operated by the city through its recreation commission.[1] The child was transported to Children's Hospital where he died the next day. The Deputy Hamilton County Coroner determined that the child's death was caused by drowning due to an accident.

The record further reflects that the swimming pool in question was not open to the public on May 31, 1986, and was not scheduled to open for the season until June 11, 1986. On May 31, 1986, recreation commission employees had been in the process of preparing the pool for opening, including filling the pool with water.[2] The swimming pool was enclosed on one side by a four-foot, eight-inch concrete wall, on top of which was a six-foot fence. On the second side, there was a seven-foot concrete wall on top of which was a six-foot fence. On the third side, the pool was protected by an eight-foot fence. Two gates permitted entry into the pool. One gate was six-feet, one-inch wide and eight feet high. The other gate was thirty-three inches wide and eight feet high. The gates were chained and fastened with a padlock. There is conflicting evidence in the record concerning how tightly the gates were chained.

On March 31, 1987, appellant filed the instant complaint in which she alleged, *inter alia:*

"On May 31, 1986, defendant, through its servants, agents and employees, negligently, and in violation of Sections 00045–5(L) and 00045–9(C) of the Cincinnati Municipal Code, left the aforesaid swimming pool accessible from the outside to small children when there was no attendant nor [*sic* ] lifeguard on duty;

"On or about May 31, 1986, as a proximate result of defendant's negligence, Antwan D. Benford, age 3, entered the aforesaid swimming pool and drowned."

Following a period of discovery, the city filed a motion for summary judgment on November 3, 1988. Appellant filed her memorandum in opposition to the motion on December 12, 1988. Additionally, both parties filed evidentiary material in support of their respective pleadings.

---

1. The city leased the swimming pool from the Cincinnati Metropolitan Housing Authority.

2. The record is not clear regarding the depth of the water on May 31, 1986. The pool itself ranged in depth from three feet to twelve feet.

Appellant submitted the affidavit of James Napier. Napier averred that on the morning of May 31, 1986, he had been jogging in the area adjacent to the pool. He stopped to rest, leaning against one of the gates. Napier stated that the chain securing the gate was loose, allowing the gate to open approximately ten inches. Napier stated that he would have been able to enter the pool area through this space had he desired to do so.[3] Napier informed two uniformed men who were working outside the pool area that the gate had opened against his weight. One of the workers responded that there was nothing that could be done.

Appellant's sole assignment of error alleges the trial court erred in granting the city's motion for summary judgment.

Appellant contends that the city is liable pursuant to R.C. 2744.02, which provides in part:

"(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function as follows:

" * * *

"(3) Political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivision open, in repair and free from nuisance, except that it is a full defense to such liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge."

Appellant initially argues that the employees' failure to act when Napier notified them of the loose chain which allowed the gate to open constituted negligence and negligence *per se* pursuant to Cincinnati Municipal Code Section 00045–5(L), which provides in part:

"All gates shall be self-latching with latches placed four feet above the underlying ground or otherwise made inaccessible from the outside to small children."

Appellant further argues that the maintenance of the pool with the loose chain around the gate constituted a nuisance under R.C. 723.01, which states:

---

3. Napier stated that at that time he was five-feet, nine-inches tall and that he weighed two hundred twenty-five pounds. As there are no known witnesses to the accident, the record contains only speculation as to how the child achieved entry into the enclosure.

"Municipal corporations shall have special power to regulate the use of the streets. Except as provided in section 5501.49 of the Revised Code, the legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair and free from nuisance."

In addition, appellant argues that appellee may be held liable pursuant to R.C. 2744.02(B)(2), which provides:

"Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."

Under the version of R.C. 2744.01(G)(2)(b) in effect at the time of the event *sub judice*, a municipality's operation of a swimming pool was classified as a proprietary function.[4]

Keeping in mind that the facts set forth in the evidentiary material submitted for review must be construed in favor of the appellant pursuant to Civ.R. 56(C), the relevant facts are: (1) the pool was enclosed by a fence and concrete wall; (2) one of the gates could be opened far enough to permit an adult to pass through it, even though the gate was secured by a chain and a lock; (3) this information had been communicated to workers in the area of the pool several hours before the three-year-old child drowned; (4) the child did not have authority to enter the pool as it was not due to be opened to the public for eleven days; (5) during the 1986 season, a $2 membership-fee payment was necessary to use the pool; (6) as of May 31, 1986, no membership fees had been collected.

In *Ware v. Cincinnati* (1952), 93 Ohio App. 431, 51 O.O. 184, 111 N.E.2d 401, an eleven-year-old boy was injured when he climbed onto the top of a ventilation shaft and fell into a tunnel twenty feet below. The boy gained access to the shaft by squeezing through a hole cut by unknown persons in the screen that covered the ventilation shaft. The shaft was located in a park that was operated by the city and, along with the tunnel, was part of a city project to create a subway system in Cincinnati.

The boy, through his mother, brought a complaint against the city alleging, *inter alia*, that the ventilator shaft and tunnel below constituted a nuisance.

---

4. R.C. 2744.01 was amended to include the operation of a swimming pool as a governmental function. See R.C. 2744.01(C)(1)(t), effective June 10, 1987. That classification was maintained under the most recent amendment to the statute. See R.C. 2744.01(C)(2)(u), effective December 14, 1988.

The city demurred for the reason that the complaint failed to state a cause of action. In affirming the trial court's ruling in favor of the city, this court reasoned:

"Plaintiff was a trespasser—the ventilator was capped so that it was not an open pit—in order to fall into the subway, one had to crawl through space between the sidewalk level and the cover, so that it seems too far fetched and unforeseeable that even the whim of a child would induce crawling through the opening into the darkened space." *Id.* at 434, 51 O.O. at 185, 111 N.E.2d at 403.

Further, there must be a connection between a breach of duty as to the child and the resulting injury he suffered. *Id.* at 432–433, 51 O.O. at 184, 111 N.E.2d at 402.

Additionally, we observed:

"Construction of the ventilator was authorized by competent legal authority and the area about it was enclosed and barred to the public so that it was not a public ground or public way mentioned in Section 3714, General Code, and the plaintiff, be he child or adult, had no legal right to enter the area in which the ventilator was located. And, of course, the doctrine of attractive nuisance does not obtain in Ohio." *Id.*

This court's decision in *Ware, supra,* was cited by the Sixth District Court of Appeals in *Quinn v. City of Toledo* (June 18, 1976), Lucas App. No. L–76–061, unreported.[5] In *Quinn,* a twelve-year-old boy drowned in a swimming pool which was operated by the defendant city of Toledo, and his representative brought suit. In affirming the trial court's granting of the city of Toledo's motion for summary judgment, the court observed that the pool was enclosed by a brick wall and a fence. Further, the swimming pool was closed for the season. The court rejected the appellant's argument that even if the child was a trespasser, the city owed a duty to the child to keep the premises in a reasonably safe condition since the pool was located near a public way and the city knew, or should have known, of the presence of trespassers. The court reasoned that the pool was not easily accessible and, under the circumstances, did not constitute a nuisance. Further, the boy had trespassed into the pool area and had voluntarily entered the water.

In the case *sub judice,* Antwan likewise trespassed into the swimming pool area. Because Antwan was a trespasser, the city's duty was not to willfully or wantonly injure him. See *McKinney v. Hartz & Restle Realtors, Inc.* (1987), 31 Ohio St.3d 244, 31 OBR 449, 510 N.E.2d 386; *Wills v. Frank Hoover*

---

5. See, also, the related case of *McGary v. Toledo* (July 2, 1976), Lucas App. No. L–76–073, unreported.

*Supply* (1986), 26 Ohio St.3d 186, 26 OBR 160, 497 N.E.2d 1118. Based upon the record before us, we cannot say that the city acted in such a way as to breach that duty.

Accordingly, we hold that the trial court did not err in granting the city's motion for summary judgment and dismissing appellant's complaint. The judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

KLUSMEIER, P.J., HILDEBRANDT and GORMAN, JJ., concur.