DECISION AND JUDGMENT ENTRY
This is an appeal from a Washington County Common Pleas Court summary judgment in favor of Jeffrey D. Stanley and Stacey Stanley, defendants below and appellees herein.
Rickey G. Bennett, the administrator of the estates of Cher D. Bennett and of Chance C. Lattea and the custodian of Kyleigh D. Bennett, plaintiffs below and appellants herein, assign the following errors.
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN DETERMINING THAT THERE WERE NO GENUINE ISSUES OF MATERIAL FACT FOR DETERMINATION BY A JURY."
THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN DETERMINING THAT REASONABLE MINDS COULD COME TO BUT ONE CONCLUSION, VIEWING THE EVIDENCE MOST FAVORABLY FOR THE PLAINTIFFS-APPELLANTS, AND THAT DEFENDANTS-APPELLEES WERE ENTITLED TO JUDGMENT AS A MATTER OF LAW."
FOURTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN RULING THAT A FIVE-YEAR-OLD CHILD COULD BE GUILTY OF TRESPASS, OR THAT SUCH ISSUE WAS NOT A JURY ISSUE."
FIFTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN INTERPRETING THE DEFENDANTS/LANDOWNERS' DUTY OF CARE IN THIS CASE."
SIXTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN DETERMINING THAT DEFENDANTS-APPELLEES' ACTIONS IN THIS CASE COULD NOT BE FOUND BY A JURY TO HAVE BEEN ACTIVE AND NEGLIGENT OPERATION OF A STATIC CONDITION UNDER WILLS V. FRANK HOOVER SUPPLY
AND COY V. COLUMBUS, DELAWARE MARION ELECTRIC CO."
SEVENTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN DETERMINING THAT ELLIOTT V. NAGY INVOLVING A PROPERLY MAINTAINED SWIMMING POOL CASE COMPELLED SUMMARY JUDGMENT FOR DEFENDANTS-APPELLEES UNDER THE FACTS IN THIS CASE."
EIGHTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED BY FAILING TO CONSIDER WHETHER DEFENDANTS-APPELLEES' CONDUCT COULD BE FOUND BY A JURY TO HAVE BEEN WILLFUL OR WANTON."
Our review of the record reveals the following facts pertinent to the instant appeal. In June of 1996, appellees purchased residential property located in Vincent, Ohio. A swimming pool was located on the property. The previous owner informed appellees that the swimming pool had not been used in approximately three years. When appellees moved into the residence, the swimming pool was in a state of disrepair. A tarp filled with leaves covered the stagnant water that had accumulated in the pool. Appellees had seen tadpoles and a snake in the water. Fencing enclosed two sides of the pool and a low brick wall surrounded the rest of the pool. No ladders were located inside the pool.
Appellees eventually removed the tarp covering the pool and drained the pool. Appellees also removed the fence surrounding the pool. Appellees considered restoring the pool to a useable condition, but at the time, found the expense too great. The pool thus was left in its state of disrepair.
In the fall of 1996, Rickey and Cher Bennett, along with their three small children, moved into the residence adjacent to appellees' property. Approximately one hundred feet separated appellees' property from the Bennetts' property. Appellees often saw the Bennett children playing outside, but appellees never saw the children playing on their property. On one occasion, Stacey Stanley asked Chance to come onto her property to retrieve the Bennetts' dog.
Rickey Bennett cautioned Chance about the dangers of the swimming pool located on appellees' property and told Chance to stay away from the pool. Nevertheless, on March 20, 1997, Chance apparently wandered onto appellees' property and headed to the swimming pool. Around five o' clock in the afternoon, when Rickey returned home from work, Rickey discovered his two young daughters crying. The older daughter told Rickey that "Mommy" and Chance were "drowning in the water." Eventually, Rickey, with the help of his nephew and Jeffrey Stanley, discovered his wife and Chance in appellees' swimming pool. The three attempted life-saving techniques, but, regrettably, they could not revive Cher and Chance.
A police investigation revealed that Chance had gone to the pool and was feeding cereal to the frogs when he fell in the pool. Cher apparently drowned while trying to save her son. The police report indicated that the pool had contained approximately six feet of water at the time of the accident.[1]
On June 16, 1997. appellants instituted a wrongful death action against appellees. In their complaint, appellants alleged that appellees negligently maintained an abandoned swimming pool on their property and that appellees' negligence proximately caused the March 20, 1997 drowning of Chance and Cher. Appellants claimed that the pool had collected at least six feet of water and that the accumulation of algae rendered the pool extremely slippery. Appellants also asserted that the pool did not have adequate fencing or ladders. Appellants averred that appellees created a dangerous condition by negligently maintaining the pool and that appellees reasonably should have known that the pool posed an unreasonable risk of serious harm to others. Appellants specifically alleged that appellees' pool created an unreasonable risk of harm to children who, because of their youth, would not realize the potential danger. Appellants further asserted that appellees' conduct in maintaining the pool constituted willful and wanton misconduct such as to justify an award of punitive damages. On July 14, 1997, appellees filed an answer denying liability.
On June 2, 1998, appellees filed a motion for summary judgment. Appellees' motion asserted that Chance and Cher were undiscovered trespassers upon their property and that appellees' conduct, therefore, should not be judged according to the ordinary negligence standard. Rather, appellees claimed that in order for appellants to recover, appellants would need to demonstrate that appellees' conduct constituted willful and wanton misconduct. Appellees argued that appellants failed to specify any facts to substantiate a claim that appellees acted willfully or wantonly. Appellees further asserted that the swimming pool did not constitute a "dangerous apparatus" such as to impose a higher standard of care upon appellees. Thus, appellees claimed that no genuine issues of material fact remained to be determined as to whether appellees were liable to appellants for the deaths of Chance and Cher.
On July 30, 1998, appellants filed a memorandum in opposition to appellees' summary judgment motion. Appellants argued that appellees incorrectly asserted that Chance and Cher were trespassers. Appellants claimed that a child of tender years cannot commit a trespass. Appellants further claimed that Cher entered appellees' property not as an ordinary trespasser. Rather, appellants asserted that Cher entered appellees' property out of necessity — to save her drowning child. Additionally, appellants alleged that appellees' maintenance of the swimming pool constituted a dangerous active operation and thus imposed a higher standard of care upon appellees. Finally, appellants argued that reasonable minds could conclude that appellees' conduct in maintaining the swimming pool "in the virtual deathtrap condition as [appellees] created * * * with three small children under the age of six living 100 feet away, constituted willful, malicious, wanton and reckless conduct."
On August 28, 1998, the trial court granted appellees' motion. The trial court agreed with appellees that Chance and Cher were trespassers and that appellees, therefore, did not owe Chance and Cher a duty of ordinary care. The trial court concluded that appellees owed Chance and Cher the duty to refrain from willful and wanton misconduct. The trial court further concluded that appellees' maintenance of the swimming pool did not amount to a dangerous active operation made perilous by appellees. The trial court reasoned that the dangers associated with the swimming pool were open and obvious. Thus, the trial court concluded that appellants failed to set forth specific facts demonstrating the existence of a genuine issue of material fact and granted appellees' motion for summary judgment.
Appellants filed a timely notice of appeal.
 I
We initially note that each of appellants' eight assignments of error challenges the trial court's granting of summary judgment.[2] Appellants' first three assignments of error essentially complain that the trial court erroneously applied the summary judgment standard. Appellants' remaining assignments of error essentially challenge the trial court's conclusions that: (1) Chance and Cher were trespassers; (2) the swimming pool did not constitute a dangerous active and negligent operation of a static condition; and (3) appellants failed to allege willful and wanton misconduct.
Appellees argue that the trial court properly entered summary judgment in their favor. Appellees assert that no genuine issue of material fact remains as to whether they breached the applicable duty of care to Chance and Cher. Appellees claim that they owed Chance and Cher the duty to refrain from willful and wanton misconduct and that no evidence exists that appellees acted willfully or wantonly in maintaining the swimming pool. Appellees further deny appellants' allegations that the swimming pool amounted to a dangerous active operation. Thus, appellees assert that they did not owe Chance and Cher a duty, beyond refraining from willful and wanton misconduct.
 II STANDARD OF REVIEW
When reviewing a trial court's decision regarding a motion for summary judgment, an appellate court conducts a de novo review.Village of Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105, 671 N.E.2d 241, 245. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial courts decision. See Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704,711, 622 N.E.2d 1153, 1157; Morehead v. Conley (1991), 75 Ohio App.3d 409,411-12, 599 N.E.2d 786, 788. In determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
Civ.R. 56(C) provides, in relevant part, as follows:
 * * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429-30,674 N.E.2d 1164, 1171.
In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings."Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66, 375 N.E.2d 46, 47. Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact. Specifically, Civ.R. 56(E) provides:
 * * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.
Consequently, once the moving party satisfies its Civ.R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing evidence of the type listed in Civ.R. 56(C), that a genuine issue of material fact remains for trial. A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. Dresher, supra; Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52,567 N.E.2d 1027, 1031.
In order for a plaintiff to survive a properly supported summary judgment motion in a wrongful death action, the plaintiff must demonstrate that a genuine issue of material fact remains as to whether: (1) the defendant owed the decedent a duty; (2) the defendant breached that duty; and (3) as a proximate result of the defendant's breach of that duty, the decedent suffered injury and death. Mussivand v. David (1989), 45 Ohio St.3d 314, 318,544 N.E.2d 265, 270; Garcia v. Puskas Family Flowers, Inc. (1996),108 Ohio App.3d 683, 686, 671 N.E.2d 607, 609 (citing Feldman v.Howard (1967), 10 Ohio St.2d 189, 193, 226 N.E.2d 564, 566-67;Oiler v. Wilke (1994), 95 Ohio App.3d 404, 408, 642 N.E.2d 667,669-70).
 III DUTY
In resolving the case at bar, we note that no one disputes the tragedy involved. Rather, the dispute focuses upon the duty appellees owed appellants' decedents. Appellants urge this court to conclude that the trial court improperly interpreted appellees' duty as refraining from willful and wanton misconduct. Appellants assert that Chance and Cher were not trespassers and that appellees thus owed Chance and Cher a higher duty of care than merely refraining from willful and wanton misconduct.[3]
Appellants contend that Chance was not a trespasser because children of tender years, like five-year-old Chance, are incapable of committing a trespass. Appellants further argue that Cher entered the land only in an effort to save her drowning son and that she, therefore, was not an ordinary trespasser.
Appellees contend that the trial court properly concluded that Chance and Cher were trespassers, and that, as such, appellees only duty was to refrain from willful and wanton misconduct. Appellees note that the Ohio Supreme Court has consistently held that children are capable of committing a trespass. Appellees further argue that the record contains no evidence that Cher entered appellees' property in an attempt to save her child's life.
Whether a duty exists on the part of a particular defendant is a question of law for the court to decide. See Mussivand,45 Ohio St. 3d at 318, 544 N.E.2d at 270; Railroad Co. v. Harvey (1907),77 Ohio St. 235, 240, 83 N.E. 66, 68; Blanton v. Pine Creek Farms
(1995), 100 Ohio App.3d 677, 685, 654 N.E.2d 1027, 1032-33, discretionary appeal disallowed (1995), 72 Ohio St.3d 1530,649 N.E.2d 839. We further note that "simply because resolution of a question of law involves a consideration of the evidence does not mean that the question of law is converted into a question of fact or that a factual issue is raised." Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68,430 N.E.2d 935, 937. As stated in O'Day v. Webb (1972), 29 Ohio St.2d 215,219, 280 N.E.2d 896. 899:
 "A review of the evidence is more often than not vital to the resolution of a question of law. But the fact that a question of law involves a consideration of the facts or the evidence does not turn it into a question of fact."
In a premises liability case, the relationship between the owner or occupier of the premises and the injured party determines the duty owed. Gladon v. Greater Cleveland RegionalTransit Auth. (1996), 75 Ohio St.3d 312, 315, 662 N.E.2d 287,291; Shump v. First Continental-Robinwood Assocs. (1994), 71 Ohio St.3d 414,417, 644 N.E.2d 291, 294. The duty that an owner or occupier owes to-an individual who enters upon his land hinges on whether the individual is an invitee, a licensee, or a trespasser. Rinehart v. Federal Natl. Mtge. Assn. (1993),91 Ohio App.3d 222, 229, 632 N.E.2d 539, 543-44.
An invitee is an individual "who rightfully come[s] upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner." Gladon,75 Ohio St.3d at 315, 662 N.E.2d at 291; Light v. Ohio Univ. (1986), 28 Ohio St.3d 66,68, 28 Ohio B. Rep. 165, 167, 502 N.E.2d 611, 613;Scheibel v. Lipton (1951), 156 Ohio St. 308, 46 Ohio Op. 177,102 N.E.2d 453, paragraph one of the syllabus. "[A] licensee is one who stands in no contractual relationship to the owner or occupier of [the] premises, but is permitted or tolerated thereon, expressly, impliedly, or inferentially, merely for his own interest, convenience or pleasure or for that of a third person." Keesecker v. McKelvey (1943), 141 Ohio St. 162, 166,47 N.E.2d 211; see, also, Boydston v. Norfolk Southern Corp. (1991),73 Ohio App.3d 727, 730, 598 N.E.2d 171, 173, motion to certify overruled (1991), 62 Ohio St.3d 1472, 580 N.E.2d 1101 (quoting Restatement of the Law 2d, Torts (1967), Section 330) ("`A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent.'"). A trespasser is one "who, without express or implied authorization, invitation or inducement, enters private premises purely for his own purposes or convenience." McKinney v. Hartz Restle Realtors, Inc.
(1987), 31 Ohio St.3d 244, 246, 510 N.E.2d 386, 388; see, also,Keesecker, 141 Ohio St. at 166, 47 N.E.2d at 214 (stating that a trespasser is one who without authorization "goes upon the private premises of another without invitation or inducement, expressed or implied, but purely for his own purposes or convenience; and where no mutuality of interest exists between him and the owner or occupant"); Jeffers v. Olexo (1989), 43 Ohio St.3d 140,145, 539 N.E.2d 614, 619.
An owner or occupier of land owes a licensee the duty to refrain from willful or wanton acts of misconduct and to warn of known latent dangers. Id., 43 Ohio St.3d at 145,539 N.E.2d at 619 (stating "it may be generally stated that a licensee takes his license subject to its attendant perils and risks, that the licensor owes him no duty except to refrain from wantonly or willfully injuring him, and that he should exercise ordinary care after discovering him to be in peril'" (quoting Hannan v. Ehrlich
(1921), 102 Ohio St. 176, 185-86, 131 N.E. 504, 507)); see, also,Salemi v. Duffy Construction Co. (1965), 3 Ohio St.2d 169,209 N.E.2d 566. A landowner generally owes an undiscovered trespasser the duty to refrain from willful or wanton misconduct. See, e.g.,Gladon, 75 Ohio St.3d at 317, 662 N.E.2d at 293; Jeffers,43 Ohio St. 3d at 145, 539 N.E.2d at 619; Sorrell v. Ohio Dept. of NaturalResources (1988), 40 Ohio St.3d 141, 144, 532 N.E.2d 722, 725;McKinney, 31 Ohio St.3d at 246, 510 N.E.2d at 388-89; Elliott v.Nagy (1986), 22 Ohio St.3d 58, 60, 488 N.E.2d 853, 854.
"To constitute willful and wanton misconduct, an act must demonstrate a heedless indifference to or disregard for others in circumstances where the probability of harm is great and is known to the actor. Brooks v. Norfolk Western Ry. Co. (1976), 45 Ohio St.2d 34, 340 N.E.2d 392." Rinehart, 91 Ohio App.3d at 229,632 N.E.2d at 544. Willful misconduct "involves an intent, purpose or design to injure." McKinney, 31 Ohio St.3d at 246,510 N.E.2d at 388-89 (quoting Denzer v. Terpstra (1934), 129 Ohio St. 1, 1 O.O. 303, 193 N.E. 647, paragraph two of the syllabus). "Wanton misconduct occurs when one fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result." McKinney, 31 Ohio St.3d at 244,510 N.E.2d 386 (quoting Hawkins v. Ivy (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, syllabus); see, also, Zivich v.Mentor Soccer Club, Inc. (1998) 82 Ohio St.3d 367, 375,696 N.E.2d 201, 207; Rinehart, 91 Ohio App.3d at 229,632 N.E.2d at 543-44.
In Bailey v. Brown (1973), 34 Ohio St.2d 62, 295 N.E.2d 672, paragraph two of the syllabus, the court described "wanton misconduct" as follows:
 "`Wanton misconduct' is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury."
See, also, Roszman v. Sammett (1971), 26 Ohio St.2d 94,269 N.E.2d 420, paragraph two of the syllabus; Boydston,73 Ohio App. 3d at 734, 598 N.E.2d at 176.
Applying the foregoing principles to the case at bar, we agree with the trial court's conclusion that Chance was a trespasser to whom appellees owed the duty to refrain from willful and wanton misconduct. No evidence exists that appellees invited Chance upon their property. Furthermore, no evidence exists that appellees' consented to or tolerated Chance's presence upon their property. Rather, the evidence demonstrates that Chance entered appellee's property for his own purposes and without appellees' invitation or inducement.
Moreover, while appellants assert that a young child cannot commit a trespass, we note that Ohio law has consistently rejected appellant's assertion. In Hannan v. Ehrlich (1921),102 Ohio St. 176, 186, 131 N.E. 504, 508, the Ohio Supreme Court, referring to its former holding in Railroad Co. v. Harvey,
concluded:
 "`If landowners are not bound to warn an adult trespasser of hidden dangers, — dangers which he by ordinary care cannot discover and therefore, cannot avoid, — on what ground can it be claimed that they must warn an infant of open and visible dangers which he is unable to appreciate? No legal distinction is perceived between the duties of the owners in one case and the other.'"
Id. (quoting Harvey, 77 Ohio St. at 253, 83 N.E. at 72); see, also, Wills v. Frank Hoover Supply (1986), 26 Ohio St.3d 186,192, 497 N.E.2d 1118. 1123 (Wright, J., concurring) ("Ordinarily, a landowner owes no duty to make his premises safe for a mere trespasser, young or old. The only duties an owner or occupier has to trespassers is to not willfully or wantonly injure them * * *."); Signs v. Signs (1954), 161 Ohio St. 241, 243,118 N.E.2d 411, 412; Carswell v. Toledo Edison Co. (1988),53 Ohio App.3d 82, 86, 557 N.E.2d 1241, 1245, motion to certify overruled, (1989), 41 Ohio St.3d 706; 534 N.E.2d 1211
("* * * Ohio law does not impose on a landowner or occupier a duty to anticipate the presence of children and to prepare for their safety);Brown v. Rechel (1959), 108 Ohio App. at 356, 161 N.E.2d at 645. The Hannan court explained the rationale for the rule as follows:
 "Any other rule than that above stated would impose a much greater burden and a higher duty for the protection of children upon every member of the community than is imposed upon the child's parents. The contrary rule [would] produce the effect of making persons owning dangerous premises insurers of the lives and limbs of the children of the neighborhood. It would seem that if any insurance must be provided, the expense of the same should be assessed upon the entire community by proper laws, rules and regulations, rather than upon landowners who happen to have upon their premises objects whereby the curious and energetic children of the neighborhood might receive injury, notwithstanding their business may otherwise be conducted in the usual and lawful manner."
Id., 102 Ohio St. at 187, 131 N.E. at 508.
In Wills, Justice Wright's concurring opinion further explains the rule regarding child trespassers as follows:
 "The only duties an owner or occupier has to trespassers is to not willfully or wantonly injure them, or permit traps or pitfalls in their way; to warn them of danger actually known by the occupier to exist on the premises after he has knowledge of the trespassers' presence; and to use due care after discovering their peril. A landowner does not insure the safety of child trespassers upon his land. Such children have no greater right to go on the land of others than have adults. The mere possibility that children may trespass on the land does not impose a duty on the landowner to prepare for their safety. * * * Neither is the property owner bound to anticipate the presence of children merely because an artificial condition on the land would be likely to attract children. * * *."
Id., 26 Ohio St.3d at 192, 497 N.E.2d at 1123 (citations omitted) (emphasis added).
Thus, we cannot conclude that Chance was anything other than a mere trespasser.
Furthermore, we believe that whether Cher was a trespasser, as the trial court concluded, or whether Cher was a licensee, as appellants appear to assert, is immaterial to our decision. Assuming, arguendo, that Cher entered appellees' property only in an effort to save her drowning son and, thus, that she should be characterized as a licensee, we continue to believe that appellees' duty remains, essentially, the same. In accepting the most favorable interpretation of the evidence, we believe that Cher possessed a "privilege" to enter appellees' property. In other words, Cher was a trespasser only by necessity — to save her drowning son. "A person privileged to enter the land is owed the same duties as a licensee. Restatement of Torts, supra, at Section 345. Because the duties owed to a licensee and to a trespasser are the same, whether [Cher] was privileged to enter the land does not change the standard of care [appellees] owed to [her]. Soles v. Ohio Edison Co. (1945), 144 Ohio St. 373, 29 Ohio Op. 559, 59 N.E.2d 138, paragraph one of the syllabus." Gladon,75 Ohio St.3d at 317, 662 N.E.2d at 292-93.
In analyzing whether appellants demonstrated that a genuine issue of material fact remains as to whether appellees' conduct was willful or wanton, we initially note that appellants' complaint fails to assert that appellees' willful and wanton misconduct proximately caused appellants' decedents' deaths. Rather, appellants couched their complaint in ordinary negligence terms. Appellants' only allegations of willful and wanton misconduct are framed in the context of punitive damages. Furthermore, we note that the trial court did not consider whether any evidence of willful and wanton misconduct existed. Rather, the trial court concluded that appellants' complaint, sounding in ordinary negligence, stated no cause of action against appellees. Because appellants failed to allege that appellees' willful and wanton misconduct proximately caused appellants' injuries, we conclude that appellants have waived the right to so argue on appeal. See, generally, Richards v.Cincinnati West Baptist Church (1996), 112 Ohio App.3d 769, 771,680 N.E.2d 191, 192.
Assuming, arguendo, that appellants had not waived the issue, we find that no genuine issue of material fact remains as to whether appellees acted willfully or wantonly. No evidence exists that appellees possessed an intent, purpose or design to injure Chance or Cher. Moreover, no evidence exists that appellees' conduct demonstrated a "heedless indifference to or disregard" for Chance and Cher. We cannot agree with appellants that appellees' conduct in allowing the swimming pool to accumulate rain water and algae is so perverse and disrespectful of the rights of others as to amount to willful and wanton misconduct. See Rinehart, 91 Ohio App.3d at 230-32, 632 N.E.2d at 544-45
(stating that failing to rid a garage of dangerous vapors or to warn of their presence "cannot reasonably constitute willful and wanton misconduct"); Benford v. Cincinnati (1990), 67 Ohio App.3d 603, 588 N.E.2d 134 (concluding that city's conduct of allowing a gap to exist in fence enclosing swimming pool, thereby permitting entry to a three year old child, did not amount to willful and wanton misconduct).
 IV DANGEROUS CONDITION
Appellants also assert that the trial court erred by determining that appellees' maintenance of the swimming pool did not amount to an active and negligent operation of a dangerous apparatus.[4] Appellants argue that the swimming pool amounted to a "dangerous instrumentality" and, thus, imposed a higher duty of care upon appellees. Appellants argue that appellees created a dangerous active and negligent operation of a static condition by: (1) allowing the swimming pool to accumulate more than six feet of water and algae; (2) not providing escape ladders in the pool; (3) not providing warning signs or no trespassing signs; and (4) knowing that three children regularly played in the yard next door.
"* * * The dangerous instrumentality exception imposes upon the owner or occupier of a premises a higher duty of care to a child trespasser when such owner or occupier actively and negligently operates hazardous machinery or other apparatus, the dangerousness of which is not readily apparent to children."McKinney v. Hartz Restle Realtors, Inc. (1987) 31 Ohio St.3d 244,247, 510 N.E.2d 386, 389; see, also, Wills v. Frank HooverSupply (1986), 26 Ohio St.3d 186, 497 N.E.2d 1118, 1121; Coy v.Columbus, Delaware Marion Elec. Co. (1932), 125 Ohio St. 283,181 N.E. 131; Ziehm v. Vale (1918), 98 Ohio St. 306,120 N.E. 702; Richards, 112 Ohio App.3d at 771, 680 N.E.2d at 192. N.E.2d 386, 388; Garcia v. Puskas Family Flowers, Inc. (1996), 108 Ohio App.3d 683,688, 671 N.E.2d 607, 610; Carswell v. Toledo EdisonCo. (1988), 53 Ohio App.3d 82, 557 N.E.2d 1241. Ohio law distinguishes "between injuries caused by a dangerous statical condition and premises where dangerous active operations are being carried on." Hannan, 102 Ohio St. at 187, 131 N.E. at 508. A visibly dangerous statical condition imposes no enhanced duty upon a landowner as to a trespassing child. Hannan,102 Ohio St. at 187, 131 N.E. at 508. If, however, "the statical condition is made perilous by the active and negligent operation thereof by the owner," Hannan, 102 Ohio St. at 187-88, 131 N.E. at 508, the landowner owes the trespasser a higher duty of care. McKinney,supra. Thus, when a landowner's active and negligent operation of a dangerous apparatus renders the statical condition of the premises perilous, and when the landowner knows or reasonably should know that the apparatus may harm an individual, "then the landowner owes a higher duty, one of ordinary care, to barricade the property and/or warn of danger." Carswell,53 Ohio App.3d at 85, 557 N.E.2d at 1244; see, also, Wills, 26 Ohio St.3d at 191,497 N.E.2d at 1122 (stating that "foreseeability" is the "linchpin" to a landowner's liability); Garcia,108 Ohio App.3d at 688, 671 N.E.2d at 610.
In Wills, a nine-year old boy and his brother were bicycling on privately-owned property. The property contained an oil well and pump. The nine-year-old boy's foot became caught in the pump as he tried to kick some mud off of his foot. Evidence was submitted that an employee of the property owner had previously seen children on the property.
The Wills court concluded that the oil pump constituted a dangerous instrumentality and that because the landowner knew that "young children were regularly on the property and that they would not be mature enough to appreciate the dangers inherent to the pumping equipment," Wills, 26 Ohio St.3d at 190,497 N.E.2d at 1121-22, the landowner owed the trespassing boy a duty to warn of the dangerous condition. In reaching its decision, the court aptly explained its previous cases involving the exception to the willful and wanton misconduct rule ordinarily applicable to trespassing children. The court explained:
 "* * * In Coy, a six-year-old plaintiff was injured by electric shock from a high voltage transformer owned by the defendant electric company. The transformer was located on vacant premises bounded on one side by a pathway used by pedestrians generally and by children continuously as a playground. Knowing that children and adults were in close proximity to the transformer, the defendant erected a protective picket fence. However, over a period of time, the defendant allowed the fence to deteriorate and become loose enough to form large openings. The plaintiff was injured when he and his brother climbed through the fence and the plaintiff came into contact with the transformer. Despite the fact that the plaintiff was trespassing at the time that the injury occurred, this court ruled that the plaintiff's petition presented a legally cognizable cause of action by alleging the negligent operation of a highly dangerous piece of equipment on premises where the defendant, for several years, allowed a protective fence to deteriorate despite full knowledge of the continuous presence of children. * * * In Railroad Co. v. Harvey (1907), 77 Ohio St. 235, 83 N.E. 66, this court held in the first paragraph of the syllabus that:
 `It is not the duty of an occupier of land to exercise care to make it safe for infant children who come upon it without invitation but merely by sufferance.' However, in Ziehm v. Vale (1918), 98 Ohio St. 306, 120 N.E. 702, the applicability of the Harvey doctrine of non-liability was distinguished in the second paragraph of the syllabus, which stated that:
 `The principle of non-liability applied in the Harvey case, supra, does not apply where the statical condition of the premises is made perilous by the active and negligent operation thereof by the owner.' Applying those principles, this court in Coy, 125 Ohio St. at 289, 181 N.E. 131 concluded:
 `The instant petition alleged the maintenance of an electrical transformer in active operation containing a powerful and dangerous electric current, situated upon premises frequented by children, together with the allegation that the company knew that children often congregated upon such premises. Therefore, within the doctrine of the Ziehm case, both knowledge of the probable presence of the infant and the employment of the active force which caused the injury were alleged. As set forth in the petition, this is not a case of a mere visible dangerous statical condition of the premises. This is an alleged case of negligent operation of a highly powerful and dangerous unit of electrical machinery upon premises where, with knowledge of the continuous presence of minors, for several years the company operating the electrical unit had permitted the fence protecting the machinery to become rotten and out of repair.'
Accordingly, and based upon this reasoning, this court held in the first paragraph of the syllabus of Coy:
 `Where the statical condition of premises is made perilous by the active and negligent operation of apparatus thereon by the person owning or controlling the same, a liability arises for injury resulting therefrom.'
Wills, 26 Ohio St.3d at 189-90, 497 N.E.2d at 1121 (emphases added).
As can be gleaned from the foregoing passage, liability does not attach unless: (1) the condition causing the injury was an inherently dangerous apparatus; (2) the owner negligently operated or maintained the apparatus; and (3) the owner knew or reasonably should have known that trespassing children frequented the property. It is not sufficient to show merely that the landowner knew that children frequented his property. See Garcia, supra. Nor is it sufficient to demonstrate that the property contained a dangerous instrumentality. Carswell, supra.
Our research has revealed no Ohio cases that have extended the dangerous instrumentality exception to cover an unused swimming pool. Ohio courts appear reluctant to impose liability upon a property owner who maintains a body of water upon his premises for injuries to trespassing children. See, e.g., Elliott, supra
(refusing to adopt attractive nuisance doctrine and to extend liability for child's death in neighbor's swimming pool).
Brockmeyer v. Deuer (Nov. 19, 1981), Franklin App. No. 81AP-537, unreported, involves facts strikingly similar to the facts in the case at bar. In Brockmeyer, the plaintiffs instituted a wrongful death action against the defendants. The plaintiffs' son drowned in an unused swimming pool located on the defendants' property. The plaintiffs' complaint alleged that the defendants' pool "`being unfenced, half-filled and slime covered, in effect, amounted to a trap, Defendant having knowledge, or being charged with knowledge that said property was frequented by adults and children.'"
The court of appeals and the trial court concluded that liability would not attach to the landowner. The court of appeals reasoned that "[t]he condition of the swimming pool and its potential perils were open and obvious and, as a matter of law, fall short of being hidden perils or traps." The court continued: "There was no disguise or concealment by the landowner of the statical condition that existed and was open and obvious to anyone contemplating using the abandoned swimming pool. It was not a condition made perilous by the active and negligent operation of the owner * * *."
Similarly, in Garcia, supra, the court refused to impose liability upon a landowner who maintained a pond and a boat upon his premises. In Garcia, a ten-year-old boy trespassed on the defendants' property upon which a pond and a boat were located. The boat had two holes in the bottom of the hull. The boy and several other children took the boat out into the pond. Water began seeping into the boat through the two holes. The ten-year-old boy fell out of the boat and drowned.
The boy's mother filed a wrongful death action against the property owners. The complaint alleged that: (1) the defendants were negligent by failing to properly secure the boat; (2) the defendants knew or should have known that the boat contained two holes in the bottom hull and that the boat would sink if used on the pond; (3) the defendants knew or should have known that children frequented the area; and (4) the defendants should have warned the children of the dangers associated with the boat.
The trial court, finding that the defendants had not breached a duty to the boy, granted summary judgment in favor of the defendants. On appeal, the appellant, the administrator of the boy's estate, asserted that the case fell within Wills, supra.
The appellant argued that sufficient evidence existed to demonstrate that the defendants knew that children frequented their property.
The court concluded that while sufficient evidence existed to demonstrate a genuine issue of material fact as to whether the defendants foresaw that the boy would trespass on their property, "foreseeability alone would not change the standard of care owed to him." Id., 108 Ohio App.3d at 689, 671 N.E.2d at 611. The court noted that for liability to attach, the appellant also needed to demonstrate that the defendants maintained an active and negligent operation of a dangerous apparatus. The court did not believe that any dangerous apparatus was involved.
Likewise, in Brown v. Rechel (1959), 108 Ohio App. 347,161 N.E.2d 638, the plaintiff instituted a wrongful death action on behalf of his four-and-one-half-year-old son who drowned in a neighbor's pond. The plaintiff alleged that the defendant's property contained a pond, approximately three feet deep, surrounded by plants, flowers, tall grass and weeds. The plaintiff asserted that the shrubbery concealed the pond and rendered the pond a trap. The plaintiff also alleged that the pond did not have any fencing or barricades and that the yard was not fenced. The plaintiff alleged that the defendant knew that young children played in the area and could easily access the yard and potentially fall into pond.
The court of appeals rejected the plaintiff's argument that the defendant-landowner was liable for the boy's death. The court quoted the following language as support for its result:
 "`1. It is not the duty of an occupier of land to exercise care to make it safe for infant children who come upon it without invitation but merely by sufferance.
 "`3. A water works company is not liable for the death by drowning of an infant who comes upon its land without invitation and there falls into a reservoir or basin of water while playing about it without the knowledge of the company.' Wheeling Lake Erie Rd. Co. v. Harvey; Swarts v. Akron Water Works Co. 77 Ohio St. 235, 83 N.E. 66."
Thus, the court concluded:
 "The maintenance of a small three-foot-deep pool on one's own premises, not shown to have the characteristics of a dangerous pitfall or obstruction, into which a licensee child falls and drowns, even though the child was so immature as to be unable to appreciate danger, cannot be said to impose liability upon the property owner for the child's death."
Brown, 108 Ohio App. at 357, 161 N.E. at 646
At least one Ohio court has refused even to extend liability for a social guest's injuries suffered in the host's swimming pool.[5] See Mullens v. Binsky (Sept. 24, 1998), Franklin App. No. 97APE11-145, unreported. The court stated that "`a pool becomes unreasonably dangerous only when there is a hidden defect or dangerous condition posing a risk of death or serious bodily harm." Scifres v. Kraft (Ky.App. 1996), 916 S.W.2d 779, 781." The court also noted that "a swimming pool presents an open and obvious condition which should be appreciated by both minors and adults. See Torf v. Commonwealth Edison (Ill.App. 1994),268 Ill. App.3d 87, 644 N.E.2d 467, 469 (`generally the danger of drowning in a body of water is considered an open and obvious risk which both minors and adults should be expected to be able to appreciate and avoid.')"
Based upon the foregoing principles, we believe that appellants have failed to demonstrate that the dangerous instrumentality exception applies. As stated above, a swimming pool generally is not an inherently dangerous apparatus. Individuals, whether young or old, should appreciate the open and obvious danger of drowning in a swimming pool, whether the water is crystal-clear or filled with slime and algae.
Consequently, we believe that appellees sufficiently apprised the trial court that no genuine issue as to any material fact remains for resolution at trial. Reasonable minds could only conclude that appellees owed appellants, at most, the duty to refrain from willful and wanton misconduct. We do not believe that a reasonable fact-finder could consider appellees' conduct in the case at bar to have been willful or wanton. Moreover, we do not believe that reasonable minds could differ as to whether appellees' maintenance of the swimming pool amounted to an active and negligent operation of a dangerous instrumentality. We therefore conclude that the trial court properly entered summary judgment in appellees' favor.[6]
Finally, we pause to note, as the court noted in Elliott,22 Ohio St. 3d at 61, 488 N.E.2d at 855, that:
 "* * * When such tragedy happens, the first reaction, quite naturally, may be to cast about for fault or some explanation of why the tragedy occurred. In some situations, however, no one is at fault. There is, in these instances, no explanation other than the ability, well known to every parent, of an active and inquisitive child to wander in search of adventure and the random cruelty of fate which sometimes turns adventure into catastrophe."
Rarely has this court encountered facts as horrific and tragic as those presented in the instant case. After our review of the pertinent case law, however, we fully agree with the trial court's conclusion to grant summary judgment in appellees' favor. As aptly stated by the trial court in its decision granting summary judgment, "the law of Ohio is clearly and squarely against [Appellant]," and "this court cannot ignore the law of Ohio."
Accordingly, based upon the foregoing reasons, we overrule appellant's assignments of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Evans, J.: Concur in Judgment Opinion
For the Court
 BY: _______________ Peter B. Abele Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[1] We note that some hearsay testimony is related in Rickey Bennett's deposition. Being that appellees have not objected to the hearsay, and all parties appear to be in agreement as to the relevant facts, we believe that we may properly consider the hearsay evidence. See, generally, Stegawski v. ClevelandAnesthesia Group. Inc. (1987), 37 Ohio App.3d 78, 83,523 N.E.2d 902, 907-08; see, also, Steinke v. Allstate Insurance Co. (1993),86 Ohio App.3d 798, 621 N.E.2d 1275; Cowen v. Lucas (June 30, 1997), Scioto App. No. 96 CA 2456, unreported.
[2] Furthermore, we note that appellants have not separately argued each assignment of error as App.R. 16(a)(7) requires. App.R. 12(a)(2) permits an appellate court to disregard any assignment of error that an appellant fails to separately argue. See Park v. Ambrose (1993), 85 Ohio App.3d 179, 619 N.E.2d 469;State v. Newberry (1991), 77 Ohio App.3d 818, 820,603 N.E.2d 1086, 1088, n. 1; State v. Houseman (1990), 70 Ohio App.3d 499,507, 591 N.E.2d 405, 410. In the interest of justice, however, we will consider appellants' eight interrelated assignments of error.
[3] Appellants do not, however, suggest what standard of care appellees owed Chance and Cher. Appellants simply argue that Chance and Cher were not trespassers.
[4] In their appellate brief, appellants also note that to prevail, they need not rely upon the attractive nuisance doctrine, which the Ohio Supreme Court has yet to adopt. See, generally, Elliott v. Nagy (1986), 22 Ohio St.3d 58,488 N.E.2d 853. The attractive nuisance doctrine is set forth in the Restatement of the Law 2d, Torts (1965) 197, Section 339 and provides as follows:
 "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
 (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
 (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
 (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
 (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to the children involved, and
 (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise protect the children.
In declining to adopt the attractive nuisance doctrine, theElliott court stated:
 "We thus decline appellant's invitation to adopt the attractive nuisance doctrine and conclude that summary judgment was proper. We hold that the attractive nuisance doctrine will not extend tort liability to the owner of a home swimming pool where the presence of a child who was injured or drowned therein was not foreseeable by the property owner."
Id., 22 Ohio St.3d at 61, 488 N.E.2d at 856.
We note that in Gurwin, The Restatement's Attractive Nuisance Doctrine: An Attractive Alternative for Ohio (1985), 46 Ohio St.L.J. 135, 147, the author indicates that Ohio is in the minority of jurisdiction by not adopting some form of the attractive nuisance doctrine:
 "Although the Restatement Rule has gained widespread adoption, Ohio has decided not to take a modern approach to the attractive nuisance problem. In failing to adopt a version of attractive nuisance doctrine, Ohio remains one of only three jurisdictions that have neither created a special duty towards trespassing children in the form of the attractive nuisance doctrine or the Restatement Rule, nor adopted the Rowland v. Christian approach by abrogating the distinctions of duty based on status as either a trespasser, licensee, or invitee. The jurisdictions following the Rowland approach have replaced those distinctions with a standard of reasonable care under the circumstances."
This article provides an excellent discussion of the various forms of the attractive nuisance doctrine and the doctrine's viability in various jurisdictions.
Additionally, in Ferrell, Emerging Trends in Premises Liability Law: Ohio's Latest Modification Continues to Chip Away at Bedrock Principles (1995), 21 Ohio N.U.L.Rev. 1121, the author notes that several jurisdictions have abandoned, in whole or in part, the common law classification system (i.e., the duty owed to an entrant hinges on the entrant's status as an invitee, licensee, or trespasser) when resolving premises liability issues. Those jurisdictions that have abandoned the common law classification system have generally employed an ordinary negligence analysis.
[5] Although the case involves the duty a host owes to a social guest, we nevertheless find the case significant. A host owes his social guest the duty of ordinary care. Likewise, when the dangerous instrumentality exception is employed, the duty of ordinary care applies. Thus, even were we to employ the dangerous instrumentality exception, appellees, pursuant to the standard of ordinary case, would possess no duty to warn of the open and obvious dangers associated with the swimming pool.
[6] The trial court did not expressly determine that the summary judgment resolved all of the claims for relief raised in appellants' complaint. We note, however, that the trial court's summary judgment effectively disposed of all of appellants' claims. The trial court disposed of appellants' claims sounding in ordinary negligence by determining that appellees did not owe appellants' decedents a duty of ordinary care. Appellants' claims for mental anguish are derivative in nature. Because appellants do not have a primary claim for relief, appellants' derivative claims must also fail. See, e.g., Bowen v. Kil-Kare (1992),63 Ohio St.3d 1442, 589 N.E.2d 246; Schlachet v. Cleveland ClinicFound. (1995), 104 Ohio App.3d 160, 168-69, 661 N.E.2d 259, 264. Additionally, appellants' claim for punitive damages cannot rest on its own. It is well-established that a claim for punitive damages will not lie unless compensatory damages also are recovered. See, e.g., Malone v. Courtyard by Marriott Ltd.Partnership (1996), 74 Ohio St.3d 440, 659 N.E.2d 1242.