BLANTON, Appellant,

v.

PINE CREEK FARMS et al., Appellees.

[Cite as *Blanton v. Pine Creek Farms* (1995), 100 Ohio App.3d 677.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 94 CA 2239.

Decided Jan. 17, 1995.

*Harris, Carter & Mahota* and *John M. Mahota,* for appellant.

*John C. Nemeth & Associates* and *John C. Nemeth; Stanley C. Bender; Cooper & Vanantwerp* and *Carl D. Edwards,* for appellees.

---

GREY, Judge.

This is an appeal from a judgment entry of the Common Pleas Court of Scioto County. The court granted the defendants' motions for summary judgment. We reverse and remand.

Pine Creek Farms is a chicken ranch, *i.e.*, it owns and operates an egg production facility at Franklin Furnace, Ohio. Country Fresh Products, Inc., d.b.a. Agrigeneral Egg Association, sells eggs. Country Fresh and Pine Creek entered into a contract whereby Country Fresh agreed to deliver four hundred fifty thousand chickens to Pine Creek and Pine Creek agreed to care for the birds, under the terms set forth in the contract. Country Fresh was to pay Pine Creek an agister's fee and would, in turn, receive the egg production from the chickens.

Under the terms of the contract, fly and pest control was the responsibility of Pine Creek while Country Fresh supplied the necessary chemicals. Plaintiff Robert J. Blanton was employed by Pine Creek Farms to help care for the birds. One of his tasks was to periodically spray the hen houses for flies.

In March 1991, the flies were thick and the fly spray was running low. Pine Creek called Agrigeneral and requested insecticide. Instead of sending Pyrenome and Clark one-percent insecticide, which was the usual fly control agent, Agrigeneral sent five five-gallon cans of Vapona Feedlot Insecticide Emulsifiable. Four Pine Creek employees used the Vapona at various times and complained of physical symptoms afterwards. As a result of these problems, the Vapona was set aside and was to be returned to Agrigeneral.

On April 24, 1991, Blanton was told to spray the hen houses for flies. After running out of UDL insecticide he began using Vapona, which had not been returned. While spraying one of the hen houses, the hose detached from the gas-powered sprayer and the contents of the canister, *i.e.*, Vapona, mixed with diesel fuel, spilled out onto his left leg. As a result Blanton allegedly experienced breathing difficulties, eye and vision problems, lid blisters, nausea and shakes.

On March 22, 1992, Blanton filed a complaint against Pine Creek grounded in intentional tort. Pine Creek answered with a general denial. On April 13, 1993, Blanton filed an amended complaint adding Country Fresh Products, Inc., d.b.a. Agrigeneral; Agrigeneral Co. L.P., d.b.a. Agrigeneral Company; and Agrigener-

al Corporation. Fermenta Animal Health Company was also named as a defendant, but on December 30, 1993, Fermenta was dismissed as a party.

On April 13, 1993, Pine Creek Farms filed a motion requesting a protective order for records pertaining to egg production and chicken mortality before and after Vapona was used. Pine Creek Farms said such information comprised trade secrets. On April 30, 1993, the court granted the protective order.

On October 7, 1993, Agrigeneral Company L.P. filed a motion requesting a protective order for records pertaining to egg production and chicken mortality before and after Vapona was used. On October 22, 1993, the order was granted.

On February 24, 1994, Pine Creek Farms filed a motion for summary judgment, arguing that, while it may have been negligent, the plaintiff could not prove his charge of an intentional tort. On March 14, 1994, Country Fresh moved for summary judgment, arguing that Blanton could not prevail on his claim against them, grounded in negligence. On April 15, 1994, the court granted summary judgment to all defendants. Blanton timely filed a notice of appeal and assigns the following claims of error.

First Assignment of Error

"The trial court erred in granting summary judgment in favor of defendant-appellee, Pine Creek Farms, when said defendant-appellee was not entitled to judgment as a matter of law."

In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, *i.e.*, we review the judgment independently and without deference to the trial court's determination. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 536 N.E.2d 411. Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881. See, also, *State ex rel. Coulverson v. Ohio Adult Parole Auth.* (1991), 62 Ohio St.3d 12, 577 N.E.2d 352; Civ.R. 56(C).

The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798. Additionally, a motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor*

*Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

Blanton says that genuine issues of material fact remain and that summary judgment was improperly granted to Pine Creek. Pine Creek says summary judgment was properly granted and cites paragraphs five and six of the syllabus of *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, to support his position.

However, in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, the Supreme Court modified and explained paragraphs five and six of the *Van Fossen* syllabus. In *Fyffe* the court stated, at the syllabus:

"1. Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed.1984), in order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)

"2. To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty— is not intent. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph six of the syllabus, modified as set forth above and explained.)

"3. Upon a motion for summary judgment, when a court is asked to inquire as to whether an employer has committed an intentional tort and evidence is submitted tending to show the employer has deliberately removed a safety guard from equipment which an employee is required to operate, and such equipment

occasions the employee's injury, this evidence should be considered along with other evidence in support of, and contra to, the motion for summary judgment in cases where the cause of action accrues prior to the enactment of Sub.S.B. No. 307, effective August 22, 1986, codifying R.C. 4121.80(G)(1)."

The language in *Fyffe* does little to clear the muddy waters created by *Van Fossen* and its progeny. *Fyffe*, 59 Ohio St.3d at 121, 570 N.E.2d at 1115 (Douglas, J., concurring in judgment only). Thus, we are still plagued with what is the quantum of proof required to establish an intentional tort against an employer.

In its motion for summary judgment, Pine Creek admitted that arguments could certainly be advanced that it had been negligent, and if negligence were the standard, summary judgment might not have been granted. However, Pine Creek argues, ordinary negligence is insufficient in an intentional tort case against an employer. *Fyffe, supra.*

Pine Creek admits that it knew other employees became ill after using Vapona. Pine Creek admits that it laid the product aside with the intent of returning it. It also admits that, on the day of the injury, it told Blanton to spray for flies and to use the Vapona which was still at hand as an insecticide. While these facts might constitute negligent behavior, Pine Creek argues, reasonable minds could not find for the nonmoving party under the *Fyffe* standard.

Turning to the *Fyffe* case again, we see the court said in paragraph two of the syllabus:

" * * * Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that consequences will follow further increases, and the employer knows that injuries to employees is certain or substantially certain to result from the process, procedure, or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce that result. * * * "

The *Fyffe* court further stated:

"Within the framework of the quoted syllabus language, acts of the employer that are termed a 'high risk' of harm, or 'where the risk is great,' could, in most instances, correctly be viewed as acts of recklessness. However, in a given instance, and within a certain fact pattern, such acts could equate to one that is substantially certain to result in harm to the employee, and reasonably raise a justiciable issue of an intentional tort. Although this is basically a matter of semantics, we do not wish a misreading of our syllabus language to result in an unreasonable application of the law. We conclude that a rational approach to

684

eliminating possible misapplication of the law * * * would be to delete the above-quoted language in paragraphs five and six of the syllabus in *Van Fossen.*" *Fyffe,* 59 Ohio St.3d at 117–118, 570 N.E.2d at 1111–1112.

While this pronouncement adds some clarity, it does not totally dispel the murkiness of the *Van Fossen* waters. One can only guess at the probability of an event which has never happened. Where there is a one-time occurrence, or when the same event happens twice, the likelihood of the event becomes more palpable. If the event occurs, exactly as before, a third time, the result of the fourth occurrence can be reasonably anticipated. If it happens a fourth time, it approaches substantial certainty, and few would expect an outcome other than that which had just previously occurred.

Here, the undisputed facts are that several employees became ill after using Vapona. When only one employee became ill after applying Vapona an intentional tort would be very difficult, if not impossible, to prove. When two employees became ill after applying Vapona, the probability that the next employee who used it would be injured also increased. When the third employee became ill after using Vapona, the probability of injury to the fourth user approaches the substantial certainty concept of *Fyffe, supra.*

*Fyffe* speaks in general terms, but in this case, as in many toxic injury intentional tort cases, the questions become: "How many employees have to get sick after applying certain chemicals? How sick do they have to get? How many separate instances must occur before the employer's acts constitute an intentional tort?"

The above-quoted sentences quoted from the syllabus in *Fyffe* are of some help in analyzing these cases, as we have just done. However, they are followed by this sentence:

"However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent."

The *Fyffe* case dealt with the removal of a safety guard and the Supreme Court held that this was to be "considered as just one part of the evidentiary picture that has been presented in support of, and contra to, the motion for summary judgment[.]" *Id.,* 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph three of the syllabus.

We will then consider the fact that each of the three employees who had used Vapona before became sick from it as part of the evidentiary picture to be considered on motion for summary judgment. Construing that part in a light most favorable to the nonmoving party, reasonable minds might conclude that Pine Creek was substantially certain the next employee who sprayed a Vapona mixture would become ill. When this fact is coupled with the testimony regard-

ing the leaky sprayer and lack of waterproof clothing, reasonable minds could find that harm to the next employee who used Vapona was a substantial certainty. We do not hold that this was a substantial certainty, but only that there is a question of fact on this material issue upon which reasonable minds might disagree. When there is such a question, of course, summary judgment is not proper.

Blanton's first assignment of error is well taken and is sustained.

Second Assignment of Error

"The trial court erred in granting summary judgment in favor of defendant-appellees, Country Fresh Products, Inc., [d.b.a.] Agrigeneral, Agrigeneral Co., L.P. [d.b.a.] Agrigeneral Company and Agrigeneral Corporation, when defendant-appellees were not entitled to judgment as a matter of law."

Blanton's suit against the above-enumerated defendants ("Agrigeneral") was grounded in negligence. He argues that there are genuine issues of material fact still remaining and summary judgment was improperly granted.

To establish actionable negligence, one must show, in addition to the existence of a duty, a breach of that duty and injury resulting proximately therefrom. *Di Gildo v. Caponi* (1969), 18 Ohio St.2d 125, 47 O.O.2d 282, 247 N.E.2d 732; *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 15 OBR 179, 472 N.E.2d 707. The existence of a duty in a negligence action is a question of law for the court to determine. See *Wheeling & Lake Erie RR. Co. v. Harvey* (1907), 77 Ohio St. 235, 83 N.E. 66. There is no formula for ascertaining whether a duty exists. Duty "is the court's 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.'" Prosser, Law of Torts (4 Ed.1971) 325–326. Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall. Prosser, *Palsgraf* Revisited (1953), 52 Mich.L.Rev. 1; *Weirum v. RKO Gen., Inc.* (1975), 15 Cal.3d 40, 123 Cal.Rptr. 468, 539 P.2d 36.

The common-law duty of due care is that degree of care which an ordinarily reasonable and prudent person exercises, or is accustomed to exercising, under the same or similar circumstances. See *Gedeon v. East Ohio Gas Co.* (1934), 128 Ohio St. 335, 190 N.E. 924. A person is to exercise that care necessary to avoid injury to others. 70 Ohio Jurisprudence 3d (1986) 62, Negligence, Section 19.

The existence of a duty depends on the foreseeability of the injury. *Menifee v. Ohio Welding Products, Inc., supra,* 15 Ohio St.3d at 77, 15 OBR at

180, 472 N.E.2d at 710, citing *Ford Motor Co. v. Tomlinson* (C.A. 6, 1956), 229 F.2d 873; *Gedeon, supra.* The court in *Menifee, supra,* set forth the following test to be used in order to determine foreseeability:

"[Whether] a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." See, also, *Thompson v. Ohio Fuel Gas Co.* (1967), 9 Ohio St.2d 116, 38 O.O.2d 294, 224 N.E.2d 131; *Mudrich v. Std. Oil Co.* (1950), 153 Ohio St. 31, 41 O.O. 117, 90 N.E.2d 859.

 While Agrigeneral had a duty to supply insecticide to Pine Creek, the question we must ask is whether a prudent person, in Agrigeneral's shoes, would reasonably foresee Blanton's injury. We must answer in the negative. The record shows that Agrigeneral was responsible for supplying insecticide to Pine Creek Farms, and that it did so in properly labeled drums. The record does not show that Agrigeneral had reason to know that Pine Creek employees were not mixing the Vapona as per instructions, *i.e.,* with water and in the proper ratios. The record does not show whether Agrigeneral knew that Pine Creek employees were applying Vapona without wearing proper equipment. There is nothing in the record to show that Agrigeneral had any control over Pine Creek's use of the insecticide it supplied. There is nothing to show that Agrigeneral had reason to know Pine Creek would continue using Vapona after the employees became ill.

Construing this evidence most favorably toward Blanton, reasonable minds could not find that Agrigeneral had been negligent, or that their negligence was the proximate cause of his injuries.

Blanton's second assignment of error is not well taken and is overruled.

Third Assignment of Error

"The trial court erred in overruling appellant's motion to compel discovery and granting Agrigeneral Company, L.P.'s motion for a protective order, entered on October 22, 1993."

 Under the discovery provisions of the Ohio Civil Rules the court is vested with broad discretion in determining what constitutes discoverable evidence. See *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 63 O.O.2d 88, 295 N.E.2d 659, paragraph one of the syllabus. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 573 N.E.2d 622; *State v. Moreland* (1990), 50 Ohio St.3d 58, 552 N.E.2d 894; *State v. Montgomery* (1991), 61 Ohio St.3d 410, 575 N.E.2d 167; *State v. Xie* (1992), 62 Ohio St.3d 521, 584 N.E.2d 715.

Blanton requested information regarding how much the chickens ate, how much they drank, how many eggs they laid, copies of the egg mortality books, copies of chicken mortality records, copies of any and all documents pertaining to egg production, and copies of any and all temperature records at Pine Creek Farms for the years 1989, 1990, 1991, and 1992. Agrigeneral argued that his request was overly burdensome, irrelevant, and constituted trade secrets.

Blanton argued that the records were relevant to show how the chickens reacted to Vapona and signed a confidentiality agreement whereby he agreed not to reveal any trade secrets. The court granted Agrigeneral's request for a protective order but did not explain whether it found the requested information to be irrelevant, to constitute a trade secret, or to be overly burdensome.

We have no idea what rationale the court used when it granted the protective order and, thus, we are hampered in determining whether it abused its discretion. However, we cannot see the relevance of the requested material. While animal studies are important in making medical policy decisions, the applicability to any case is quite likely marginal. The issue in this case is whether Blanton was injured by the Vapona. While the effects of Vapona on the chickens over the previous four years might be of some evidentiary value, there is always a danger of making inference from animal studies to humans, *e.g.,* thalidomide!

This is not to say that a party may not, on first having shown the relevance and admissibility of the material requested, make a request for such records. In this case, however, appellant made a very broad request for discovery without ever having demonstrated the relevance of the request. As such, we cannot find that the trial court abused its discretion in granting the protective order.

Blanton's final assignment of error is not well taken and is overruled.

In light of the foregoing, the judgment of the trial court granting summary judgment in favor of appellee, Agrigeneral, is affirmed. The judgment of the trial court granting summary judgment in favor of appellee, Pine Creek Farms, is reversed and this cause is remanded for further proceedings.

*Judgment accordingly.*

PETER B. ABELE and STEPHENSON, JJ., concur.