OPINION
{¶ 1} Appellants, Marina Jurasek ("Jurasek") and Gabriel Jurasek, appeal from a final judgment of the Lake County Court of Common Pleas granting appellee, Gould Electronics, Inc. ("Gould"), summary judgment. For the reasons that follow, we affirm the judgment of the trial court.
{¶ 2} The record shows that Jurasek began working for Gould as a research chemist in 1980. When Gould terminated Jurasek's employment in 1998, appellants filed a complaint against the company in which they alleged that during the course of Jurasek's employment she was exposed to toxic chemicals that caused injuries to her respiratory, central, and peripheral nervous systems. Based on these allegations, appellants asserted the following causes of actions: (1) assault and battery (i.e., employer intentional tort); (2) handicap discrimination; (3) retaliatory discharge in violation of Ohio's workers' compensation laws; (4) wrongful discharge in violation of public policy; and (5) loss of consortium.
{¶ 3} After Jurasek voluntarily dismissed her handicap discrimination claim, Gould filed a motion for summary judgment with respect to the remainder of appellants' complaint. In its motion, Gould argued, inter alia, that appellants had not provided any evidence to indicate that either Gould had committed an employer intentional tort, or that Gould had retaliated against Jurasek because she filed a workers' compensation claim.
{¶ 4} Appellants filed a brief in opposition in which they maintained that summary judgment was inappropriate because Gould knew of a dangerous condition within the laboratory Jurasek worked, and despite this knowledge, the company failed to take corrective action and required Jurasek to work in the dangerous environment. Also, appellants argued that Gould's explanation for terminating Jurasek's employment was pretextual in nature and that the company actually decided to fire her only after she filed a workers' compensation claim.
{¶ 5} The trial court considered the parties' arguments, and in a judgment entry dated December 22, 2000, granted Gould summary judgment. Shortly thereafter, appellants' attorney sent the trial court a letter in which he informed the court that, among other things, it had referred to an unconstitutional statute, R.C. 2745.01, in its final judgment. In response to this letter, the trial court, sua sponte, issued a new judgment entry on January 9, 2001, ordering that any reference to R.C.2745.01 in its decision granting Gould summary judgment be deleted. Furthermore, the trial court emphasized that its prior decision was "not grounded in R.C. § 2745.01 but in Fyffe v. Jeno's Inc. (1991),59 Ohio St.3d 115, which remain[ed] good law in Ohio."
{¶ 6} From this decision, appellants filed a timely notice of appeal with this court. They now submit the following assignments of error for our consideration:
 {¶ 7} "[1.] The trial court prejudicially erred by dismissing the Appellant's [sic] case using an unconstitutional statute, to wit: Ohio R.C. Section 2745.01 as a governing basis to find the Appellant's [sic] employment intentional tort case is insufficient to merit a trial by jury[.]
 {¶ 8} "[2.] The trial court has impermissibly attempted to cure the error asserted in the First Assignment of Error by sua sponte issuing an [sic] modified final judgment entry, without a Rule 60 Motion being filed, deleting the court's reference to R.C. Section 2745.01 in the final judgment based upon language in a letter sent to the Judge by opposing counsel[.]
 {¶ 9} "[3.] The trial court erred to the prejudice of the Appellant by resting its adverse decision on an [sic] selective recitation of the facts and the position of each party in its final judgment entry and before it arrived at its erroneous conclusion that the Appellant `has not set forth specific facts which show that there is a genuine issue whether Defendant committed an intentional tort against her[.]'
 {¶ 10} "[4.] The trial court prejudicially erred by deciding a matter of fact reserved for a jury in Appellant's [sic] Ohio R.C. Section 4123.90 and Ohio public policy tort claim, to wit; `the evidence tends to indicate that the decision to terminate Plaintiff was made prior to her actually filing her worker's [sic] compensation claim' and then dismissing the cause of action which was in fact sufficient to require disposition by jury trial."
{¶ 11} In their first assignment of error, appellants argue that the trial court improperly relied upon R.C. 2745.01 when it denied Jurasek's claim that Gould committed an employer intentional tort. Specifically, appellants contend that by finding R.C. 2745.01 governed employer intentional tort cases, the trial court incorrectly assumed that to overcome summary judgment, appellants were required to provide specific evidence that Gould's actions were both deliberate and intentional, and that such evidence had to meet a clear and convincing standard of proof.
{¶ 12} In Johnson v. BP Chemicals, Inc., 85 Ohio St.3d 298, 308,1999-Ohio-267, the Supreme Court of Ohio struck down RC. 2745.01 as unconstitutional in its entirety because it imposed "excessive standards (deliberate and intentional act), with a heightened burden of proof (clear and convincing evidence) * * *." As a result, the determination of an employer intentional tort claim must be made under the common-law test explained in Fyffe, supra.
{¶ 13} Having said that, however, we note that the trial court's decision to grant Gould summary judgment was not based solely on the application of R.C. 2745.01. Rather, after the trial court referred to R.C. 2745.01 in its judgment entry, the court then proceeded to set forth the appropriate standard under Fyffe to be used in such cases. Thus, even though the court improperly referred to the unconstitutional statute, because this was a summary judgment exercise, this court has the ability to conduct a de novo review of the record and determine whether or not the elements of Fyffe were met. See, e.g., Nuss v. Hand-Craft Cleaners
(May 24, 2000), 9th Dist. No. 18850, 2000 Ohio App. LEXIS 2189. Appellants' first assignment of error, therefore, has merit insofar as it correctly states that the trial court should not have alluded to R.C.2745.01 in its decision.
{¶ 14} Under assignment of error two, appellants maintain that the trial court abused its discretion when it sua sponte amended its December 22, 2000 judgment entry without either party first filing a motion to vacate or modify. That is, appellants believe that because no party filed a proper motion in accordance with the Ohio Rules of Civil Procedure, the trial court did not have the authority to amend its final judgment.
{¶ 15} Appellants are correct in that a trial court does not have the inherent power to sua sponte modify a final judgment. Instead, "[o]nce an order has been journalized by a trial court as a final appealable order, that order cannot be modified or vacated except as provided under Civ.R. 50(B) (motion notwithstanding the verdict), Civ.R. 59 (motion for a new trial), or Civ.R. 60(B) (motion for relief from judgment)." Krumheuer v. Flowers Versagi Court Reporters (Nov. 6, 1997), 8th Dist. No. 72431, 1997 WL 691169, at 2. Accordingly, because the trial court did not have the authority to modify its prior final judgment, the court's January 9, 2001 judgment entry is a nullity.
{¶ 16} However, even though the trial court erred in modifying its award of summary judgment, the error does not affect the outcome of this appeal. Levin v. George Fraam Sons, Inc. (1990), 65 Ohio App.3d 841,848. Rather, the trial court's December 22, 2000 decision resolved all claims between the parties. Furthermore, as we noted earlier, we have the ability to conduct a de novo review of the record on appeal and determine whether the trial court properly granted Gould summary judgment. Appellants' second assignment of error has merit to the limited extent indicated.
{¶ 17} In assignment of error three, appellants argue that there is a genuine issue of material fact as to whether Gould committed an employer intentional tort. The couple maintains that Gould was aware of a dangerous condition within the laboratory Jurasek worked, that the company was substantially certain an injury would occur if corrective measures were not taken, and that Gould, knowing of the dangerous condition, required Jurasek to work in the hazardous environment.
{¶ 18} Summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C);Leibreich v. A.J. Refrigeration, Inc., 67 Ohio St.3d 266, 268,1993-Ohio-176.
{¶ 19} The party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id.
{¶ 20} If the moving party fails to satisfy this initial burden, summary judgment should be denied. Id. However, if this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id.
{¶ 21} In Fyffe, the Supreme Court of Ohio set forth the following standard for proving an employer intentional tort:
 {¶ 22} "1. Within the purview of Section 8(A) of the Restatement of Law 2d, Torts, and Section 8 of Prosser Keeton on Torts (5 Ed. 1984), in order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. * * *
 {¶ 23} "2. To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent. * * *" (Citations omitted.) Fyffe at paragraphs one and two of the syllabus.
{¶ 24} To overcome a properly supported motion for summary judgment, an employee alleging that she was injured as a result of an intentional tort committed by an employer must provide specific evidence to raise a genuine issue of material fact as to each of the Fyffe
requirements. Hannah v. Dayton Power Light Co., 82 Ohio St.3d 482,485, 1998-Ohio-408. Put another way, if the injured employee fails to present sufficient evidence to support any one of the three requirements, summary judgment in favor of the employer is appropriate. Koeth v. TimeSavers, Inc. (May 26, 2000), 11th Dist. No. 99-G-2211, 2000 WL 688826, at 4.
{¶ 25} For ease of discussion we will consider each requirement individually. First, before an employer can be found liable for an intentional tort, the injured employee must establish that there was a dangerous process, procedure, instrumentality, or condition within the employer's business operation, and that the employer knew the danger existed.
{¶ 26} Here, it is undisputed that as a research chemist with Gould, Jurasek was exposed to chemicals during her employment. It is also undisputed that Jurasek complained to her supervisors on numerous occasions that she suffered adverse effects from certain odors while at work.
{¶ 27} Despite her complaints, however, there is no evidence that Jurasek was ever exposed to dangerous levels of chemicals at Gould. The record shows that Jurasek suffered from a medical condition known as multiple chemical sensitivity, which caused her to have adverse reactions to even common everyday odors and chemicals. In fact, other employees working in the same areas as Jurasek oftentimes were not affected by the alleged odors that made her sick.
{¶ 28} Furthermore, although appellants argue that the fume exhaust hoods used in Gould's laboratories were unsafe, there is no evidence to support this assertion. When Gould had the fume exhaust hoods tested in 1997, the report showed that while "reverse flow" may occur during operation, the fume exhaust hoods would perform adequately if used properly. Keith Roofner ("Roofner"), the individual who evaluated the fume exhaust hoods, testified in his deposition that there was nothing to indicate that the fume exhaust hoods being used were unsafe at the time he conducted the evaluation. Roofner also testified that Gould could have installed a more efficient ventilation system. However, he did not equate the existing less efficient system to an unsafe system.
{¶ 29} Also, contrary to what appellants allege on appeal, there is no evidence in the record that Jurasek ever raised the issue of a safer exhaust system with the company while she was employed there. Even if Jurasek had done so, there is nothing to suggest that the ventilation system in use created a dangerous condition. For example, the Occupational Safety and Health Administration ("OSHA") conducted an inspection of Gould on April 14, 1998. This inspection revealed that although some of the procedures used at the company produced noticeable odors, there were no detectable levels of contaminants in the air.
{¶ 30} Simply put, evidence that the chemicals Jurasek worked withcould have caused physical harm if acceptable exposure limits were exceeded is not enough to create a genuine issue of material fact. Likewise, evidence that Gould's ventilation system could have been more efficient, is also insufficient, as neither constitutes specific evidence of an existing dangerous condition within the laboratory. Thus, Jurasek failed to rebut Gould's evidence demonstrating that the work area was safe.
{¶ 31} It is important to emphasize that under Fyfee, Gould did not have to accommodate any special or individual needs of a specific employee. Instead, Gould was only obligated to provide a safe working environment for all employees who performed that particular job function. Any duty to accommodate an employee with a recognized disability would only arise under the Americans with Disabilities Act or similar legislation; Jurasek, however, voluntarily dismissed that claim.
{¶ 32} With respect to the second requirement under Fyffe, appellants had to provide evidence that Gould was substantially certain an employee would be injured if exposed to the alleged dangerous process, procedure, instrumentality, or condition within the company's business operation. This is a difficult standard to meet. Nonetheless, "if the employer knows that the dangerous procedure is substantially certain to cause harm to the employee, intent is inferred." Goodin v. Columbia Gasof Ohio, Inc. (2000), 141 Ohio App.3d 207, 218. "An employee cannot, however, demonstrate the `substantial certainty' element simply by illustrating that the employer acted negligently or recklessly." Id. at 219. Again, this standard must be viewed separate and apart from any standard under a disability discrimination claim.
{¶ 33} When making this determination, "[p]rior accidents are probative of whether an employer knows that an injury is substantially certain to occur." Taulbee v. Adience, Inc., BMI Div. (1997),120 Ohio App.3d 11, 20. In turn, "the absence of prior accidents `strongly suggests' that injury from the procedure was not substantially certain to result from the manner in which the job was performed." Id. See, also, Blanton v. Pine Creek Farms (1995), 100 Ohio App.3d 677, 684, (noting that "[w]hen only one employee became ill * * * an intentional tort would be very difficult, if not impossible, to prove.").
{¶ 34} Also, a court should consider the inherent risks involved with the employer's business. As the Supreme Court of Ohio observed inVan Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 117:
 {¶ 35} "There are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an `intentional tort' and therefore an exception, under Blankenship or Jones, to the exclusivity of the Act."
 {¶ 36} "Accordingly, in reviewing whether the employer knew the harm to the employee was a substantial certainty, courts should focus not only on the existence of prior similar incidents, but also `on the employer's knowledge of the degree of risk involved.'" Goodin at 221, quoting Taulbee at 21. Nevertheless, knowing of and appreciating a risk, which is "something short of substantial certainty[,]" does not establish intent. Fyffe at paragraph two of the syllabus.
{¶ 37} Turning to the case at bar, appellants could not point to any other similarly situated Gould employee who had been injured at the company because of alleged chemicals in the air. There is also no evidence that acceptable exposure limits were ever exceeded during Jurasek's employment. When employees did raise concerns about possible contamination, Gould monitored the laboratories and found nothing out of the ordinary. Even OSHA, which inspected Gould in April 1998 after receiving a complaint, could not detect chemical levels violating its regulations. In fact, appellants provided no evidence that OSHA had ever cited Gould for any violations.
{¶ 38} Furthermore, while it is true that Gould gradually became aware of Jurasek's increasing sensitivity to workplace odors, there is no evidence that the workplace itself was the cause of her increased sensitivity. Rather, the record shows that the work odors apparently triggered this increasing sensitivity. During her employment, Jurasek herself did not definitely know what was causing her increased sensitivity, and was cleared by one of her doctors, Dr. Kathleen M. Fagan ("Dr. Fagan"), to return to work before Gould terminated her.
{¶ 39} Unfortunately for Jurasek, her job as a research chemist required her to work in an environment where exposure to chemicals, albeit at acceptable levels, was a reality. Exposure to such conditions, however, is insufficient, by itself, to support a successful intentional tort claim against an employer. See, e.g., Goddin at 224.
{¶ 40} Moreover, it is undisputed that as Jurasek's increasing sensitivity became apparent, Gould allowed Jurasek to leave her work area at will and never pressured her to stay when she asked to leave work for the day. Gould also tried to create "safe zones" for her within the laboratories where Jurasek could go to if she felt overcome by odors. The company even provided Jurasek with a respirator that she could wear while conducting her experiments. However, Jurasek conceded that she did not use the respirator because she claimed the rubber also made her sick.
{¶ 41} As we noted earlier, all of this was done despite no evidence that a dangerous condition to anyone else existed. Although no other similarly situated employee was affected, Gould, nevertheless, tried to address Jurasek's specific problems. While there was no dispute that she had become highly sensitive to her work environment, there was no evidence that the environment was "dangerous" to anyone other than someone with Jurasek's abnormal sensitivity.
{¶ 42} We do not find this to be a case where the employer totally failed to create and implement appropriate safety procedures despite knowing of a dangerous process, procedure, instrumentality, or condition within the company's business operation. To the contrary, the evidence was uncontroverted that Gould had the appropriate safety procedures in place, and even exceeded its duty in its efforts to accommodate Jurasek's increased sensitivity. Therefore, we find no genuine issue of material fact with respect to whether Gould was substantially certain Jurasek would be injured if she were exposed to a known danger. Appellants' third assignment of error has no merit.
{¶ 43} In their fourth and final assignment of error, appellants argue that the trial court erred in granting Gould summary judgment on Jurasek's retaliatory and wrongful discharge claims. Specifically, they maintain that Gould terminated her employment in retaliation for her filing a workers' compensation claim, and that this act violated public policy.
{¶ 44} The following undisputed facts are relevant to this assignment of error. On March 4, 1998, Jurasek had an adverse reaction to chloroform while conducting a test at the request of her supervisor, Thomas J. Ameen ("Ameen"). Because she felt sick, Jurasek left work and did not return until March 9, 1998. Upon her return, Jurasek completed a form entitled "Workers' Compensation Injury or Illness Report" in which she explained what happened during the test. Several hours later, Jurasek met with Ameen and Gould's Director of Benefits, William Wonders ("Wonders"). During this meeting, Jurasek was informed that she was being placed on paid leave until a decision could be made with respect to her continued employment. Ultimately, the parties were unable to reach an amicable settlement agreement and Gould finally terminated Jurasek's employment effective April 15, 1998.
{¶ 45} R.C. 4123.90 provides in relevant part that "[n]o employer shall discharge * * * any employee because the employee filed a claim * * * under the workers' compensation act for an injury * * * which occurred in the course of and arising out of his employment with that employer." In interpreting this particular provision, this court has held the following:
 {¶ 46} "An employee establishes a prima facie case for retaliatory discharge when the employee proves the following: (1) an injury on the job; (2) the filing of a workers' compensation claim; and (3) the employee's discharge in contravention of R.C. 4123.90. Marsh v. Lincoln Elec. Co. (Apr. 4, 1997), Lake App. No. 96-L-052, unreported, at 6-7. Once the employee establishes a prima facie case for retaliatory discharge, the burden of going forward with evidence shifts to the employer to set forth a legitimate, nonretaliatory reason for the discharge. Kilbarger v. Anchor Hocking Glass Co. (1997), 120 Ohio App.3d 332, 338. If the employer sets forth a legitimate, nonretaliatory reason for the employee's discharge, the employee must establish that the reason given by the employer is pretextual and that the real reason for the discharge was the employee's protected activity under the Workers' Compensation Act. Id.
While the burden of going forward with evidence may shift between the employee and the employer in these types of cases, the employee will always retain the ultimate burden of proof in an action filed under R.C. 4123.90." Green v. Burton Rubber Processing, Inc. (Dec. 11, 1998), 11th Dist. No. 97-G-2102, 1998 WL 964484, at 3.
{¶ 47} In the instant matter, neither party disputes the fact that Jurasek was injured on the job with respect to the March 4, 1998 incident. After looking at the evidence submitted during the summary judgment exercise, however, we conclude that it is certainly arguable that she had initiated proceedings towards a workers' compensation claim prior to her discharge.
{¶ 48} The Supreme Court of Ohio held in Bryant v. Dayton CasketCo. (1982), 69 Ohio St.2d 367, syllabus, that "[t]he language of R.C.4123.90 is clear and unambiguous that an employee must have either filed a claim or initiated or pursued proceedings for workers' compensation benefits prior to being discharged for his employer to be liable under the statute." See, also, Stevens v. Ravenna Aluminum Industries, Inc.
(May 27, 1994), 11th Dist. No. 93-P-0080, 1994 WL 237976, at 2. In other words, R.C. 4123.90 "applies only if the employee had been discharged after taking some action which would constitute the actual pursuit of his claim, not just an expression of his intent to do so." Bryant at 371. In those situations involving self-insured employers like Gould, a workers' compensation claim or proceeding has been instituted or pursued if any of the following apply:
 {¶ 49} "(1) a formal written claim is filed by the employee with the employer, the Bureau of Workers' Compensation, or the Industrial Commission of Ohio, or (2) the employer agrees to pay or has paid for medical care provided to an injured employee, or (3) the employer receives written notice from an independent health care provider in the form of a bill for medical services rendered to an injured employee on account of his employment-related injury, or (4) the employer becomes similarly involved with the compensation process." Roseborough v. N.L. Industries (1984), 10 Ohio St.3d 142, syllabus.
{¶ 50} As we noted above, the form Jurasek completed on the day she returned to work following the chloroform incident is clearly labeled as a "Workers' Compensation Injury or Illness Report." Nowhere in this report does Jurasek explain what injuries, if any, she suffered, or what medical treatment she received. Rather, Jurasek merely stated that she was exposed to a "toxic/carcinogenic substance." However, the mere fact that she filled out a form entitled "Workers' Compensation Injury or Illness Report," arguably suggests that Jurasek took an action that "would constitute the actual pursuit of a workers' compensation claim prior to discharge." Stevens at 2.
{¶ 51} Nevertheless, under R.C. 4123.90, even if Jurasek properly pursued a workers' compensation claim, she failed to provide evidence that her firing was pretextual. After an employee establishes a prima facie case for retaliatory discharge, the employer has the burden of setting forth a legitimate, nonretaliatory reason for her discharge. Green at 3. If the employer does so, the employee must provide evidence that the given reason is pretextual, and that the real reason for the discharge was the employee's protected activity under the Workers' Compensation Act. Id.
{¶ 52} On the day of the incident, Ameen sent a memorandum to Wonders detailing what had occurred. In this memorandum, Ameen also voiced his concerns about Jurasek's medical condition. Based on his observations, Ameen believed that "[Jurasek's] sensitivity to chemicals makes her unsuitable for lab work and certainly ineligible for any plant visits. The major problem is that her job is laboratory and chemical by nature and description. I can not use her on my staff."
{¶ 53} There was also an abundance of evidence showing that Gould had been concerned for several years prior to the March 1998 incident about Jurasek's absences and their effect on her work. Simply stated, although only two hours passed between when Jurasek completed the incident report and when Gould placed her on paid leave, appellant provided nothing during the summary judgment exercise to suggest that Gould's reason for her termination was pretextual. Certainly, the incident was the straw that broke the camel's back. However, the evidence shows that it was the incident, not the initiation of a workers' compensation claim, which triggered the company's response.
{¶ 54} While the results may be unavoidably harsh, a decision to terminate based on excessive sick leave is a valid business decision, and the instant case would not be the first time such a decision coincided with a workers' compensation claim. Moreover, Green clearly provides an employer with the opportunity to demonstrate that there was no pretextual reason for the termination. Once the employer does that, the burden again shifts to the employee. Here, Jurasek failed to meet that reciprocal burden with evidence that her sick leave was not excessive; that her sensitivity would improve; that despite the sensitivity, she could be suitably employed for the type of work Gould required; or that her work had not been adversely affected by her medical condition and related absences.
{¶ 55} As for Jurasek's claim that her discharge violated public policy, we disagree. Traditionally, "a general or indefinite hiring is terminable at the will of either party, for any cause, no cause or even in gross or reckless disregard of any employee's rights[.]" Collins v.Rizkana, 73 Ohio St.3d 65, 67, 1995-Ohio-135. This concept is generally referred to as the "employment-at-will doctrine." Id.
{¶ 56} Prior to 1990, the employment-at-will doctrine precluded a wrongful discharge action by an at-will employee. Cooper v. Metal SalesMfg. Corp. (1995), 104 Ohio App.3d 34, 47. However, in Greeley v. MiamiValley Maintenance Contrs., Inc. (1990), 49 Ohio St.3d 228, paragraph one of the syllabus, the Supreme Court of Ohio recognized an exception to the traditional rule when it held that a discharged employee has a private cause of action sounding in tort for wrongful discharge if his or her termination was in contravention of a sufficiently clear public policy as embodied in a statute.
{¶ 57} Since Greeley, the Supreme Court has expanded its holding to include other causes of action based on public policy, but not necessarily on a public policy manifested in a statute. See, Painter v.Graley, 70 Ohio St.3d 377, 1994-Ohio-334, paragraph three of the syllabus, (holding that a cause of action may be brought for wrongful discharge in violation of public policy found in the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law); Collins, supra, at syllabus (holding that a cause of action may be brought for wrongful discharge in violation of public policy based on sexual harassment/discrimination).
{¶ 58} To be successful on a public policy wrongful discharge claim, the plaintiff must prove the following:
 {¶ 59} "(1) a clear public policy existed, which was manifested in a federal or state constitution, statute, or administrative regulation, or in the common law; (2) dismissing employees under circumstances like those involved in this situation would jeopardize public policy; (3) the plaintiff's dismissal was motivated by conduct related to the public policy; and (4) the employer lacked overriding legitimate business justification for the dismissal. Doody v. Centerior Energy Corp. (2000), 137 Ohio App.3d 673, 680." Bentley v. API Pattern Works, Inc. (Oct. 26, 2001), 11th Dist. No. 2000-L-140, 2001 WL 1301466, at 4.
{¶ 60} Although Jurasek has set forth a clear public policy reason, i.e., retaliation for filing a workers' compensation claim, as we noted above, there was no evidence that she was discharged for filing such a claim. Furthermore, it is important to note that appellants did not otherwise challenge Gould's given reason for firing Jurasek, except to say that it was merely pretextual. Despite what Dr. Fagan believed concerning Jurasek's ability to return to Gould, Jurasek herself testified that she was unable to work in that environment.
{¶ 61} However, even if there were a workers' compensation claim filed prior to her discharge, this is not a wrongful discharge case as the undisputed facts show that for several years prior, Gould became increasingly concerned about Jurasek's accelerating sensitivity to chemical odors and her inability to effectively perform her fundamental job duties. In other words, Gould demonstrated valid business reasons to terminate Jurasek's employment that went unrebutted. Therefore, we conclude that the trial court did not err in granting summary judgment to Gould on this claim. Appellants' fourth assignment of error is meritless.
{¶ 62} Based on the foregoing analysis, appellants' first and second assignments of error have merit to the limited extent indicated; however, their third and fourth assignments of error are not well-taken. The judgment of the trial court, therefore, is affirmed.
ROBERT A. NADER, J., DIANE V. GRENDELL, J., concur.