OPINION
{¶ 1} Appellant, Tyrone Hunter, appeals from a final judgment of the Lake County Court of Common Pleas grating appellee, Interpak, Inc. ("Interpak"), summary judgment. For the reasons that follow, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
 {¶ 2} Appellant began working for Interpak, a company specializing in rotationally molded products, on August 11, 1998, as a temporary employee on the third shift. On his first day of work, appellant's supervisors assigned him to a rotational molding machine that Interpak used to produce plastic parts for consumer and commercial use. This machine consisted of a central turntable with three equally spaced rotating arms. Attached to each of the arms, which were one to two feet wide, were two hexagonal shaped platforms that held the clamshell molds used in making the plastic components.
 {¶ 3} As part of his job duties, appellant was responsible for removing the plastic products from their molds after cooling. In order to do this, he had to use scaffolding to climb on top of the rotational molding machine's arms, which were six feet, three inches above the concrete floor. During this process, a pneumatic brake was used to hold the arms in position so that the scaffolding could be placed next to the rotational molding machine. Once appellant climbed the scaffolding, he then had to step onto the arm, remove the molded plastic parts, and drop them to a mat on the floor.
 {¶ 4} On the night of the accident, a thunderstorm caused a power failure at the plant, plunging the facility into total darkness. Earlier that evening, appellant had been instructed that if the lights went out while he was on the rotational molding machine, he was to feel his way back to the scaffolding because the pneumatic brake would eventually release and allow the arm to move. When appellant attempted to return to the scaffolding, however, he fell to the concrete floor and sustained serious injuries.
 {¶ 5} As a result of his injuries, appellant filed a complaint against Interpak in which he claimed that the company had committed an employer intentional tort. Interpak filed an answer denying the allegations in the complaint.[1]
 {¶ 6} Interpak then filed a motion for summary judgment, arguing that appellant could not prove that the company knew an injury was substantially certain to occur because there had been no similar prior incidents. Appellant countered by filing a brief in opposition in which he maintained that Interpak was well aware of the danger in working on the rotational molding machine without fall protection, particularly in light of the power outages that had occurred in the past. The trial court considered the parties' arguments, and in a judgment entry dated October 4, 2001, granted Interpak summary judgment.
 {¶ 7} From this decision, appellant filed a timely notice of appeal with this court. He now argues under his sole assignment of error that there is a genuine issue of material fact as to whether Interpak committed an employer intentional tort. Specifically, appellant submits that Interpak knew of a dangerous condition in the plant, that the company was substantially certain an injury would occur, and that Interpak, knowing of the dangerous condition, required him to work in the hazardous environment.
 {¶ 8} Summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C);Leibreich v. A.J. Refrigeration, Inc., 67 Ohio St.3d 266, 268,1993-Ohio-176.
 {¶ 9} The party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim.Id. at 293.
 {¶ 10} If the moving party fails to satisfy this initial burden, summary judgment should be denied. Id. However, if this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id.
 {¶ 11} In Fyffe v. Jeno's Inc. (1991), 59 Ohio St.3d 115, the Supreme Court of Ohio set forth the following standard for pursuing an employer intentional tort claim:
 {¶ 12} "1. Within the purview of Section 8(A) of the Restatement of Law 2d, Torts, and Section 8 of Prosser Keeton on Torts (5 Ed. 1984), in order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. ***
 {¶ 13} "2. To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk -something short of substantial certainty — is not intent. ***" (Citations omitted.)Fyffe at paragraphs one and two of the syllabus.
 {¶ 14} To overcome a properly supported motion for summary judgment, an employee alleging that he was injured as a result of an intentional tort committed by an employer must provide specific evidence to raise a genuine issue of material fact as to each of the Fyffe
requirements. Hannah v. Dayton Power Light Co., 82 Ohio St.3d 482,485, 1998-Ohio-408. Put another way, if the injured employee fails to present sufficient evidence to support any one of the three requirements, summary judgment in favor of the employer is appropriate. Koeth v. TimeSavers, Inc. (May 26, 2000), 11th Dist. No. 99-G-2211, 2000 WL 688826, at 4.
 {¶ 15} In granting Interpak summary judgment, the trial court focused more on the operation of the rotational molding machine rather than the circumstances surrounding the machine's use. Although such an analysis is certainly relevant to the issues in this case, appellant actually alleged in his complaint that the power outages in the plant created a dangerous condition from which Interpak failed to properly protect its employees. Except for the potential to fall from the machine during a blackout, appellant did not suggest that the rotational molding machine itself was dangerous to operate. Moreover, there is nothing to suggest that the machine moved during the power outage, or that appellant was injured as a result of any rotation. Nevertheless, because this is a summary judgment exercise, we will conduct a de novo review of the record and determine whether the elements of Fyffe have been met.
 {¶ 16} First, an injured employee must establish that there was a dangerous process, procedure, instrumentality, or condition within the employer's business, and that the employer knew the danger existed, before the employer can be found liable for an intentional tort. In other words, an employee "has the burden of proving by a preponderance of the evidence that the employer had `actual knowledge of the exact dangers which ultimately caused' injury. ***" (Citations omitted.) Sanek v.Duracote Corp. (1989), 43 Ohio St.3d 169, 172.
 {¶ 17} There is evidence, when viewed in a light most favorable to appellant, that Interpak was aware of a dangerous condition within its business operation. Several of the company's employees admitted that there had been other power outages before appellant's accident. In fact, there was some evidence that such outages may have occurred as much as once or twice a month. Furthermore, Interpak unmistakably appreciated the inherent dangers involved in working in a manufacturing facility where power outages were a somewhat frequent occurrence, as the company installed backup lights that were to come on when the main lights went out. Unfortunately, the backup lights did not come on the night appellant was injured, and there was no dispute that appellant fell because he could not see where he was going.
 {¶ 18} The risks associated with moving about in unguarded, elevated areas are evident. Combine that with the possibility of being plunged, without warning, into complete darkness, and you have an obviously unsafe situation with potentially serious consequences. Taulbeev. Adience, Inc., BMI, Div. (1997), 120 Ohio App.3d 11, 17-18. Accordingly, appellant satisfied his evidentiary burden under the first prong of Fyffe.
 {¶ 19} With respect to the second requirement, appellant had to provide evidence that Interpak was substantially certain an employee would be injured if exposed to the alleged dangerous process, procedure, instrumentality, or condition within the company's business operation. This is a difficult standard to meet.
 {¶ 20} Nonetheless, "if an employer knows that the dangerous procedure is substantially certain to cause harm to the employee, intent is inferred." Goodin v. Columbia Gas of Ohio, Inc. (2000),141 Ohio App.3d 207, 218. "An employee cannot, however, demonstrate the `substantial certainty' element simply by illustrating that the employer acted negligently or recklessly." Id. at 219.
 {¶ 21} Interpak maintains that it was unaware that harm was a substantial certainty because there had been no similar incidents in the previous five years that the rotational molding machine was in operation. The company also submits that appellant's supervisors adequately instructed appellant on both his job duties and on what he was to do in case of a power outage.
 {¶ 22} "Prior accidents are probative of whether an employer knows that an injury is substantially certain to occur." Taulbee at 20. In turn, "the absence of prior accidents `strongly suggests' that injury from the procedure was not substantially certain to result from the manner in which the job was performed." Id. See, also, Vermett v. FredChristen Sons Co. (2000), 138 Ohio App.3d 586, 603 (holding that "absence of a prior injury is not the sole factor in determining an employer's knowledge."); Blanton v. Pine Creek Farms (1995),100 Ohio App.3d 677, 684, (noting that "[w]hen only one employee became ill *** an intentional tort would be very difficult, if not impossible, to prove.").
 {¶ 23} "Establishing the employer's knowledge of substantial certainty of harm is difficult where there are no prior accidents of a similar character, but a lack of prior accidents is not necessarily fatal to a plaintiff's case." Taulbee at 20. As the Eighth District noted inCook v. Cleveland Elec. Illum. Co. (1995), 102 Ohio App.3d 417, 429-430:
 {¶ 24} "The appreciation of danger can be obtained in a myriad of ways other than personal knowledge or previous injuries. Simply because people are not injured, maimed or killed every time they encounter a device or procedure is not solely determinative of the question of whether that procedure or device is dangerous and unsafe. If we were to accept the appellee's reasoning, it would be tantamount to giving every employer one free injury for every decision, procedure or device it decided to use, regardless of the knowledge or substantial certainty of the danger that the employer's decision entailed. This is not the purpose of Fyffe. It is not incumbent that a person be burned before one knows not to play with fire."
 {¶ 25} "Accordingly, in reviewing whether the employer knew the harm to the employee was a substantial certainty, courts should focus not only on the existence of prior similar incidents, but also `on the employer's knowledge of the degree of risk involved.'" Goodin at 221, quoting Taulbee at 21. Nevertheless, knowing of and appreciating a risk, which is "something short of substantial certainty[,]" does not establish intent. Fyffe at paragraph two of the syllabus.
 {¶ 26} Here, the absence of prior accidents, while relevant, does not negate the other evidence in this case. The accident occurred on appellant's first day of work, so he was clearly unfamiliar with the rotational molding machine and the surrounding area.[2] There was also no question that Interpak knew of the relatively frequent power outages. Furthermore, although the distance from the top of the machine to the concrete floor was only six feet, three inches, it must be considered in the following context: (1) the facility could become pitch black at any moment; (2) employees could be stranded on the machines during a blackout; and (3) the scaffolding was only temporary and had to be set in place before use. As a result, there was certainly a genuine issue of material fact as to whether the conditions in which appellant was working created such an obvious danger that Interpak knew an injury was substantially certain to occur.
 {¶ 27} Finally, appellant had to provide evidence that Interpak required him to work under conditions where the company was substantially certain that he would be injured. As we discussed above, appellant had to use mobile scaffolding to climb on top of the rotational molding machine in order to remove the plastic parts from their molds. Accordingly, the fact that Interpak directed appellant to perform his job on unguarded equipment, arguably without sufficient training, with the possibility of the lights going out, was sufficient, for summary judgment purposes, to satisfy the final prong under Fyffe.
 {¶ 28} By reversing the trial court's decision to grant Interpak summary judgment, this court is not passing judgment on appellant's claim. Rather, the facts of this case raise several questions best suited for a jury's determination.
 {¶ 29} Based on the foregoing analysis, we conclude that appellant presented sufficient evidence to satisfy each of the three requirements under Fyffe. Appellant's sole assignment of error is well-taken. The judgment of the trial court, therefore, is reversed, and the matter is remanded for further proceedings consistent with this opinion.
DONALD R. FORD and ROBERT A. NADER. JJ., concur.
[1] Appellant later amended his complaint to include the manufacturer of the rotational molding machine as a new party defendant. The manufacturer moved for summary judgment, which the trial court granted, and is not a party to this appeal.
[2] Interpak's workforce consisted of a large number of temporary employees.